619 So.2d 274 (1993)
Larry Dean KRAMER, Appellant,
v.
STATE of Florida, Appellee.
No. 78659.
Supreme Court of Florida.
April 29, 1993.
Rehearing Denied June 18, 1993.
*275 James B. Gibson, Public Defender, and Michael S. Becker, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen. and Kellie A. Nielan, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
We have on appeal an order of the trial court below imposing a sentence of death upon Larry Dean Kramer for first-degree murder. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
On November 7, 1990, the body of Walter Edward Traskos was found along Interstate 4 in Orlando. Traskos had died of fractures to the head caused by a beating with a blunt instrument. The body also had a blood alcohol level of .23, and had sustained various other injuries consistent with either falling or being struck by something. A large rock was found near the body. Numerous beer cans were found near the body.
An informant led police to suspect that Appellant, Larry Dean Kramer, was involved in the murder. With the informant's help, police located Kramer at a library, arrested him, and took him in for questioning. After being read Miranda rights, Kramer first told police he wanted to see an attorney. Then he said he would continue without an attorney and give a taped statement.
In his first statement, Kramer told police that he and the victim bought some beer and went to a culvert along the Interstate. He said another person was present who stayed a couple of hours; and that he left the victim's presence after some four hours. At this time, said Kramer, the victim was alive and unharmed. Kramer claimed he did not return to the culvert and spent the night at a church.
The investigating officer indicated he did not believe Kramer's story. Kramer then gave a second statement. This time Kramer said he had gotten into an argument with the victim, and the victim pulled a knife. Kramer said he picked up a goodsized rock and threw it at the victim, hitting him on the head. The victim started *276 to get back up, so Kramer said he hit him again with the rock. Kramer said he took the knife and threw it in a lake.
The state notes that the victim suffered defensive wounds, and that blood spatter evidence showed the victim had been attacked while in passive positions, including lying facedown. Kramer had no visible injuries when arrested within forty-eight hours of the killing.
Kramer was indicted for murder. At the conclusion of the evidence at trial, the defense unsuccessfully moved for judgment of acquittal based on the failure to prove either felony murder or premeditation. After the penalty phase, the jury recommended death by a vote of nine to three and the judge concurred.
The trial court found two aggravating factors: conviction of a prior violent felony, and that the murder was heinous, atrocious, or cruel. In mitigation, the trial court found a long list of factors, including the following: (1) Kramer was under the influence of mental or emotional stress at the time the crime was committed; (2) Kramer's capacity to conform his conduct to the requirements of the law was severely impaired at the time of the crime; (3) Kramer was a model prisoner and good worker during his prior incarceration[1]; and (4) Kramer suffered from alcoholism and from some prior drug abuse.
Kramer raises a number of issues in this appeal. First, he argues that the State improperly struck the only remaining black juror from the venire in violation of this Court's holding in State v. Slappy, 522 So.2d 18 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988). The record and argument of counsel reveal at least two bases for the peremptory strike: (1) the black juror obtained a bad "score" on a personal 1-to-5 scale developed by the prosecutor; and (2) the juror equivocated in her views toward the death penalty.[2] We agree with Kramer that the first of these reasons is insufficient under Slappy because a personal rating scale of itself does not constitute a neutral, nonpretextual reason for a peremptory strike. However, juror equivocation on a material matter does. Because the State had at least one valid reason for striking the juror, we find no Slappy error.
Second, Kramer argues that the trial court improperly restricted cross-examination of a medical examiner regarding needle tracks that may have been on the victim's body. Kramer argues that the defense hoped to establish that the victim was a drug addict undergoing withdrawal symptoms that may have made him violent. Nothing else in the record supports this contention, however. Moreover, the blood spatter evidence and lack of injuries on Kramer's body when he was taken into custody support the State's contention here. The error, if any, clearly was harmless beyond any reasonable doubt in light of the entire record. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
Third, Kramer argues that the State failed to prove premeditation as a matter of law, requiring us to reduce the sentence to second-degree murder. The blood spatter and victim injury evidence, however, provide a substantial basis for the conclusion that premeditation existed. Thus, a jury question properly existed that was resolved against Kramer. We may not revisit that determination, and no error exists.
Fourth, Kramer argues that irrelevant, inflammatory, and prejudicial slides or photographs were admitted to the jury. However, during the guilt phase, it is apparent that the depictions were relevant in that they supported testimony regarding *277 the meaning of the blood spatter and victim injury evidence. While they may have helped sway the jury to the State's theory, they did so in a way the law permits. We find no error during the guilt phase. As to the penalty phase, the State appears to have introduced photographs of the crime scene and murder weapon in Kramer's prior attempted murder conviction. This subissue is moot in light of our disposition of the case below.
Fifth, Kramer argues that the State made improper comments on the evidence and on Kramer's exercise of his right to remain silent. Among other remarks, the state attorney called upon the defense to produce the knife Kramer alleged the victim had pulled on him immediately prior to the murder, and to explain evidence tending to show that the victim was passive when killed. While the State may have danced perilously close to an improper argument on a few occasions, we do not believe the line was crossed here. The State is entitled to highlight inconsistencies in evidence and testimony, which is primarily what the state attorney did here. We note, however, that prosecuting attorneys risk error when they start calling upon the defense to prove something. It is the State that bears the burden of proof, not the defense. Art. I, § 9, Fla. Const. The wiser approach would be not to make the argument at all.
We also do not believe the trial court erred in instructing on voluntary intoxication and allowing the State to argue that voluntary intoxication did not exist. The defense did not request the instruction and now argues that the instruction coupled with the State's argument undermined the defense theory that something less than premeditation existed here. However, we agree with the State that the theory advanced by the defense should have been presented by raising the affirmative defense of voluntary intoxication, which in this context is the proper means of negating the specific intent required for premeditation. See Randolph v. State, 526 So.2d 931 (Fla. 1st DCA), review denied, 536 So.2d 245 (Fla. 1988). In effect, the defense raised voluntary intoxication albeit without asking for the instruction. The trial court accordingly did not err in giving the instruction.
Sixth, Kramer argues that he was entitled to special instructions on heat-of-passion killing and on the photographs and other depictions presented into evidence. While such instructions are within the discretion of the trial court, we find no abuse of discretion here in failing to give special instructions not required by applicable law.
Seventh, Kramer contends the State repeatedly violated a motion in limine requiring it to refrain from mentioning the eventual death of the victim of Kramer's prior attempted murder conviction. Obviously, this was error. However, we also note that the State made corrections to the jury. In light of the entire record, the errors were harmless beyond a reasonable doubt with respect to the guilt phase. Di-Guilio. With respect to the penalty phase, the issue is moot in light of our disposition of the case below.
Finally, Kramer argues a variety of other penalty phase issues, the most significant of which is that death is not proportional here. In Tillman v. State, 591 So.2d 167 (Fla. 1991), we explained that the purpose of the doctrine of proportionality is to prevent the imposition of "unusual" punishments contrary to article I, section 17 of the Florida Constitution,[3] among other reasons. While the existence and number of aggravating or mitigating factors do not in themselves prohibit or require a finding that death is nonproportional, see id. at 168-69, we nevertheless are required to weigh the nature and quality of those factors as compared with other similar reported death appeals. Id.
In this case, the trial court found two aggravating factors: prior violent felony conviction, and the fact that the murder *278 was heinous, atrocious, or cruel. The first of these factors clearly exists. We assume arguendo that the second exists.
The factors establishing alcoholism, mental stress, severe loss of emotional control, and potential for productive functioning in the structured environment of prison are dispositive here. While substantial competent evidence supports a jury finding of premeditation here, the case goes little beyond that point. The evidence in its worst light suggests nothing more than a spontaneous fight, occurring for no discernible reason, between a disturbed alcoholic and a man who was legally drunk. This case hardly lies beyond the norm of the hundreds of capital felonies this Court has reviewed since the 1970s. See Teffeteller v. State, 439 So.2d 840, 846 (Fla. 1983), cert. denied, 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 754 (1984). Our law reserves the death penalty only for the most aggravated and least mitigated murders, of which this clearly is not one. Accordingly death is not a proportional penalty here.
The remaining penalty-phase issues are moot and thus need not be addressed here. The conviction is affirmed but the penalty is reduced to life imprisonment without possibility of parole for twenty-five years.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD and KOGAN, JJ., concur.
GRIMES, J., concurs in part and dissents in part with an opinion in which HARDING, J., concurs.
SHAW, J., concurs as to conviction and dissents as to sentence.
GRIMES, Justice, concurring in part, dissenting in part.
Because of certain trial errors, Kramer's death sentence should be vacated and the case remanded for a new sentencing proceeding. However, Kramer's sentence should not be reduced to life imprisonment on the grounds of proportionality.
The evidence demonstrates that Kramer systematically pulverized the victim as he tried to get away and fend off the blows. Kramer delivered a minimum of nine to ten blows; none but the final two would have been fatal. The crime scene photographs and the blood pattern testimony demonstrate that the attack began at the upper portion of the embankment, proceeded down approximately fifteen feet to the culvert, and then down the culvert to the final resting place of the victim. The blood pattern, consisting of individual droplets as opposed to cast off blood, indicated that there was not a struggle. The final blows, which were delivered with a concrete block, were inflicted while the victim's head was lying against the cement. The murder was clearly heinous, atrocious, or cruel.
Kramer's prior violent felony consisted of beating another victim with a concrete block within two hundred feet of where the instant murder took place. That victim was beaten so severely about the face that he was blinded in one eye and had no memory of the incident. He subsequently died, but in the meantime Kramer had been convicted only of attempted murder. Thus, there were two valid statutory aggravating circumstances to be weighed against no statutory mitigating circumstances.
Notwithstanding, the majority believes that "[t]he factors establishing alcoholism, mental stress, severe loss of emotional control, and potential for productive functioning in the structured environment of prison are dispositive." Maj. op. at 277. While Kramer was an alcoholic, it is not at all clear that this had anything to do with the crime. The trial judge carefully analyzed the evidence and concluded that Kramer's mental and emotional problems were not even serious enough to meet either of the two statutory definitions for mental mitigation. The fact that Kramer has the potential to behave in prison can hardly offset two strong statutory aggravating circumstances. The majority has simply reweighed the evidence under a cloak of proportionality.
A proportionality analysis involves a comparison with other cases. The only case referred to for comparison by the majority is Teffeteller v. State, 439 So.2d 840 (Fla. 1983), cert. denied, 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 754 (1984). However, *279 in that case the death sentence was simply reversed for a new penalty phase proceeding because of trial error, in the same manner that I advocate being done here. Furthermore, after a new penalty phase proceeding, Teffeteller's death sentence was upheld. Teffeteller v. State, 495 So.2d 744 (Fla. 1986).
On the other hand, the imposition of the death penalty pursuant to a jury's recommendation in this case would be consistent with many of this Court's prior decisions. E.g., Bowden v. State, 588 So.2d 225 (Fla. 1991) (heinous, atrocious, or cruel and prior violent felony weighed against terrible childhood and adolescence), cert. denied, ___ U.S. ___, 112 S.Ct. 1596, 118 L.Ed.2d 311 (1992); Hayes v. State, 581 So.2d 121 (Fla. 1991) (two aggravating factors weighed against minor mitigating factor of age, low intelligence, learning disabled, product of deprived environment); Freeman v. State, 563 So.2d 73 (Fla. 1990) (death penalty not disproportionate where two aggravating factors weighed against mitigating evidence of low intelligence and abused childhood), cert. denied, ___ U.S. ___, 111 S.Ct. 2910, 115 L.Ed.2d 1073 (1991); Kight v. State, 512 So.2d 922 (Fla. 1987) (death penalty proportionally imposed with two aggravating factors despite evidence of mental retardation and deprived childhood), cert. denied, 485 U.S. 929, 108 S.Ct. 1100, 99 L.Ed.2d 262 (1988), disapproved on other grounds, Owen v. State, 596 So.2d 985 (Fla. 1992). This Court has also found that the death penalty is proportional where the murder was heinous, atrocious, or cruel and the defendant had previously been convicted of a very similar crime. Lemon v. State, 456 So.2d 885 (Fla. 1984), cert. denied, 469 U.S. 1230, 105 S.Ct. 1233, 84 L.Ed.2d 370 (1985).
I do not know whether Kramer would be resentenced to death following a new penalty phase proceeding. I do know that if he were, the sentence would not be disproportionate.
HARDING, J., concurs.
NOTES
[1] This necessarily implies a potential for rehabilitation and productivity within a prison setting. See Cooper v. Dugger, 526 So.2d 900 (Fla. 1988).
[2] We recognize Kramer's argument that the juror mistakenly answered a questionnaire when she indicated she could not vote for the death penalty. Nevertheless, no matter how certain her views may have been during oral examination, we agree with the State that inconsistent answers on a material matter by a juror at any time during examination (including answers on a juror questionnaire, during oral examination, or both) constitutes "equivocation" for purposes of a peremptory strike.
[3] As explained in Tillman v. State, 591 So.2d 167, 169 (Fla. 1991), the death penalty is rendered "unusual" in a constitutional sense if it is imposed for a murder "similar to those ... cases in which death previously was deemed improper."