699 So.2d 619 (1997)
Robert John SAGER, Appellant,
v.
STATE of Florida, Appellee.
No. 84539.
Supreme Court of Florida.
June 26, 1997.
Rehearing Denied September 18, 1997.
*620 James A. Boyko of James A. Boyko, P.A., New Port Richey, for Appellant.
Robert A. Butterworth, Attorney General, and Robert J. Landry, Assistant Attorney General, Tampa, for Appellee.
PER CURIAM.
We have on appeal the judgment and sentence of the trial court imposing the death penalty upon Robert John Sager. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed below, we affirm Sager's first-degree murder conviction but vacate his death sentence and remand for imposition of a sentence of life imprisonment without possibility of parole for twenty-five years.
The facts of this murder are more fully set out in Voorhees v. State, 699 So.2d 602 (Fla. 1997). Briefly, Sager and Donald Voorhees were drinking with Audrey Steven Bostic on January 3, 1992, in Bostic's residence. After Sager and Bostic started to fight, Voorhees and Sager tied Bostic to a chair with telephone cords and searched the residence for things to steal. Bostic was making noise, and Sager and Voorhees continued beating Bostic while he was tied in an attempt to keep him quiet. Next, Bostic was dragged into the bedroom by his feet and was stabbed in the throat. Bostic died as a result of these injuries.
Sager and Voorhees left Bostic's residence, and the two drove to Jacksonville in Bostic's car with Bostic's remaining cash, automated *621 teller machine (ATM) card, and telephone calling card. On the way, they stopped at several ATMs and tried unsuccessfully to withdraw money from Bostic's account. In Jacksonville, Sager told another person that he and Voorhees had beaten a man and stolen his car. The two then headed for Madison, Mississippi, and during their trip, they made several long-distance telephone calls using the victim's telephone calling card.
In the late afternoon on January 8, Sager and Voorhees accepted an offer from officers in Wayne County, Mississippi, to come to the county jail and get dry clothes and a hot meal while their clothes were washed. Voorhees and Sager did not bring any identification with them. During the ride to the police station in the officers' car, Voorhees and Sager were not handcuffed. Once at the station, although not formally arrested, the two filled out arrest cards with fictitious names, addresses, and social security numbers. While the two spent the night in jail in the same cell, Mississippi officers ran a check on the names given, and the search revealed nothing.
At around seven the next morning, Voorhees was told that neither he nor Sager could leave the jail until each provided the officers with a true identification. By 12:30 that afternoon, Sager had told Mississippi officers his real name, which was verified; however, Sager had not left the jail. Voorhees called a friend in Jacksonville in an attempt to prove his identity, and the friend told an officer in Mississippi that the man in the station in Mississippi was Donald Voorhees and that a police officer from Pasco County, Florida, was looking for Voorhees and Sager in an attempt to ask them about a murder in Pasco County. The Mississippi officer told Voorhees and Sager that they could not leave until he found out what the Pasco County officers wanted. He then placed Voorhees and Sager in separate cells and allowed Voorhees to tell Sager about the Pasco County officers coming to talk to them about a murder.
Sager approached a Mississippi officer at around eight that night and stated that he wanted to talk about a murder in Florida. Sager was advised that an officer would talk to him and would tape the conversation. Sager agreed, and after Sager was apprised of his Miranda rights, Sager confessed to the murder. When officers from Pasco County arrived at the jail sometime after midnight, they too apprised Sager of his Miranda rights, and Sager again confessed to slitting the victim's throat.
After a jury trial, Sager was convicted of first-degree murder. Thereafter, a sentencing proceeding was held, and the jury recommended death by a vote of eight to four. Finding two aggravators[1] and four mitigators,[2] the trial court followed the jury's recommendation and sentenced Sager to death.
On appeal to this Court, Sager raises twelve issues.[3] The first two issues concern *622 the question of whether the trial court abused its discretion in denying Sager's motion to suppress. In accordance with our decision in Voorhees v. State, 699 So.2d 602 (Fla.1997), we hold that the trial court properly found Sager's statements to both the Mississippi and Pasco County officers sufficiently purged of any unlawful taint from the period of illegal detention to make them admissible under both the constitutions of Florida and the United States.[4]
In Sager's next three issues, Sager contends that the trial court abused its discretion in not allowing Sager to introduce testimony in the guilt phase of the trial which would have shown that Voorhees admitted to both Pasco County officers and a fellow inmate in Mississippi that Voorhees was the one who slit Bostic's throat. The trial court found this testimony inadmissible in the guilt phase of the trial under section 90.804(2)(c), Florida Statutes (1991), on the basis that these statements did not exonerate Sager but rather tended only to lessen his responsibility. Sager claims that this testimony, coupled with the medical-expert testimony at trial, would have provided a basis upon which the jury could have concluded that Sager did not have a homicidal intent and that therefore Sager was not guilty of first-degree murder.
As we held in Voorhees concerning the admission of Sager's statements in which he admitted to slashing the victim's throat, we agree that it was error for the trial court not to admit Voorhees' statements in the guilt phase of Sager's trial.[5] However, in light of the instructions given to the jury and the other properly introduced evidence at trial, we find beyond a reasonable doubt that the error complained of did not contribute to the guilty verdict. The jury in this case was instructed on both first-degree premeditated and felony murder, and there was overwhelming evidence that Sager was guilty of first-degree felony murder. See § 782.04, Fla.Stat. (1991). Sager admitted in his confession that after hitting and kicking the victim, he tied the victim's hands and feet with phone cord. Further, Sager admitted that while the victim was tied up, he knocked some furniture over looking for things to steal and took the victim's cash and wallet from his pants' pockets. This was consistent with the evidence adduced at trial which showed that the victim's house was ransacked and that the pockets of the victim's pants were turned inside out and were empty. Voorhees' statements did not contradict the evidence that Sager actively participated in the crime, but rather, the statements tended to support it. Voorhees stated that both he and Sager tied the victim to a chair, tried to gag him with a flag, beat the victim, and searched the victim's apartment for things to steal. Additionally, after the victim's throat was slit, the evidence showed that Sager and Voorhees took the victim's car, ATM card, and telephone calling card; that they drove to several ATMs, where they attempted to withdraw money from the victim's bank account; and that they used the victim's calling card. Consequently, we find this error to be harmless beyond a reasonable doubt. See Brown v. State, 644 So.2d 52 (Fla.1994), cert. denied, 514 U.S. 1117, 115 S.Ct. 1978, 131 L.Ed.2d 866 (1995).[6]
While not raised by Sager, we find that the record contains competent, substantial evidence to support the first-degree murder conviction, and we affirm the conviction.[7]
*623 Turning to the penalty phase, we conclude that a death sentence for Sager in this case would not be proportionate. Our proportionality review is not a comparison between the number of aggravating and mitigating circumstances. See Terry v. State, 668 So.2d 954, 965 (Fla.1996). Rather, it requires this Court to consider the totality of the circumstances in a case and to compare the case with other capital cases. Id. By ensuring that death not be imposed as a punishment for a murder in cases similar to those in which death was deemed an improper punishment, proportionality prevents the imposition of "unusual" punishments contrary to article I, section 17 of the Florida Constitution. See Kramer v. State, 619 So.2d 274, 277 (Fla.1993). The totality of the circumstances in this case do not place this murder in the most aggravated and least mitigated for which the death penalty is reserved. Id.
As we held in Voorhees, this murder is similar to the one committed in Kramer. In Kramer, after drinking beer with the victim, the defendant and the victim began arguing. When the victim pulled a knife on the defendant, the defendant threw a rock at the victim, hitting the victim in the head. The defendant then hit the victim again in the head with the rock, killing him. In aggravation, the trial court found two aggravators: prior violent felony conviction; and the murder was heinous, atrocious, or cruel. Id. at 277-78. Nevertheless, we found that the evidence taken in the worst light showed that this was a spontaneous fight, occurring for no apparent reason between the defendant, a disturbed alcoholic, and the victim, who was legally drunk. Id. at 278. Based on this finding and the mitigation presented, which included alcoholism, mental stress, severe loss of emotional control, and potential for productive functioning in the structured environment of prison, we found death not to be a proportionate penalty. Id.
Similar to our holding in Kramer and Voorhees, we find the evidence here does not support the imposition of the death penalty. The two aggravators in this case are overshadowed by the mitigation and circumstances of this murder: the murder occurred after a drunken episode between the victim and the defendant. There was direct evidence that Voorhees, Sager, and the victim were all intoxicated during the murder. This evidence came in through Sager's confession and statements made by Voorhees in which he acknowledged that the three were drinking. This is also corroborated by the victim's blood alcohol level of .24 percent. Cf. Nibert v. State, 574 So.2d 1059, 1063 (Fla.1990) (proof that defendant suffered from extreme alcohol abuse and had been drinking during commission of crime is relevant and supports mitigating circumstances of extreme mental or emotional disturbance and substantial impairment of defendant's capacity to control his behavior).
As well, there was testimony that Sager suffered from mental illness. Although the trial court afforded it little weight, there was evidence that Sager had been hospitalized in a mental health facility in Kansas and was released from the hospital just weeks before the crime. Last, there was evidence that Voorhees was the leader of the two. There was evidence that Sager first hit the victim; however, Voorhees told police that he then told Sager to keep the victim down while Voorhees went through the house looking for things to steal. After the victim was stabbed, Voorhees undertook steps to eliminate any evidence that he and Sager committed the crime. These steps included: burning his shirt because it had blood on it; wiping away any fingerprints in Bostic's house; directing Sager to turn on the oven to cause the place to explode; and driving away in the victim's car. The totality of the circumstances and the mitigation presented here require us to conclude that death is not a proportionate penalty in this case.
Accordingly, we affirm the conviction, vacate the death sentence, and remand for imposition of a sentence of life imprisonment *624 without possibility of parole for twenty-five years.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW and HARDING, JJ., concur.
WELLS, J., concurs in part and dissents in part with an opinion, in which GRIMES, J., concurs.
ANSTEAD, J., concurs in result only.
WELLS, Justice, concurring in part and dissenting in part.
I concur with the majority that the first-degree murder conviction should be affirmed. However, for the reasons expressed in my dissenting opinion in Voorhees v. State, 699 So.2d 602 (Fla.1997), I dissent from the reversal of the death sentence in this case. Rather, I would remand this case for resentencing before the trial court because the trial court improperly employed a standard of "reasonable certainty" in evaluating the mitigating circumstances.
GRIMES, J., concurs.
NOTES
[1] The trial court found and weighed the following aggravators: (1) the murder was committed during the course of a robbery, great weight; and (2) the murder was especially heinous, atrocious, or cruel, great weight.
[2] The trial court found and weighed the following mitigators: (1) Sager was under the influence of extreme mental or emotional disturbance at the time of the murder, little weight; (2) Sager's capacity to appreciate the criminality of his conduct and to conform his behavior to the requirements of law was substantially impaired, very little weight; (3) Sager was 22 years old at the time of the murder, very little weight; and (4) Sager was an accomplice whose participation was relatively minor, very little, if any, weight.
[3] These issues include: (1) whether Sager's unlawful detention in Mississippi was unconstitutional; (2) whether the trial court erred in denying Sager's motion to suppress; (3) whether the trial court erred in excluding proffered exculpatory hearsay testimony from codefendant Voorhees; (4) whether the trial court erred by excluding exculpatory statements from Benny Humphrey; (5) whether the errors taken above, in conjunction with the medical expert testimony, require a new trial; (6) whether the evidence at trial was sufficient to support a conviction for premeditated murder; (7) whether the trial court erred in instructing the jury on and finding the aggravator that the murder was committed during the course of a robbery; (8) whether the trial court erred in instructing and finding the aggravator that the murder was heinous, atrocious, or cruel; (9) whether the trial court erred in failing to suppress the fruits of the warrantless, nonconsensual search of Sager's dwelling; (10) whether this Court should establish a bright-line rule requiring a record waiver of the right to testify during the penalty phase; (11) whether the trial court erred in allowing defense counsel to proceed even though counsel stated that he was not qualified to try the case; and (12) whether section 921.141, Florida Statutes, is constitutional.
[4] At the time when the trial court ruled on Sager's motion to suppress, Sager's trial was consolidated with Voorhees' trial. Soon thereafter, each defendant filed a motion to sever his trial from that of his codefendant. The trial court granted these motions, and Sager and Voorhees were tried separately.
[5] The trial court did admit these statements in the penalty phase.
[6] Our disposition of this issue, finding the evidence overwhelmingly supported a conviction of first-degree murder under a felony-murder theory, also disposes of Sager's issue 6, whether the evidence at trial was sufficient to support a conviction for premeditated murder.
[7] We dispose of Sager's remaining guilt-phase issues as follows. Concerning issue 9, we find that the trial court did not abuse its discretion in denying the motion to suppress evidence seized following a search of Sager and Voorhees' motel room. Concerning issue 11, we find that the trial court did not abuse its discretion in proceeding with the trial despite defense counsel's alleged objection that he was not qualified to try a first-degree murder case.