647 So.2d 824 (1994)
Derek Todd THOMPSON, Appellant,
v.
STATE of Florida, Appellee.
No. 81304.
Supreme Court of Florida.
December 15, 1994.
*825 Nancy A. Daniels, Public Defender and David A. Davis, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Carolyn M. Snurkowski, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
We have on appeal the judgment and sentence of the trial court imposing the death penalty upon Derek Todd Thompson. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the conviction, but vacate the death penalty and remand for imposition of a life sentence with no chance of parole for twenty-five years.
Sometime after midnight, May 3, 1992, Derek Thompson walked into a Subway sandwich shop in Pensacola, conversed with the attendant, Carl Lenzo, and then shot him once through the top of the head. Lenzo lost consciousness immediately and died. Marilyn Coltrain was eating a sandwich in her car in front of the shop and saw Thompson enter the shop and converse with the clerk. When Coltrain looked away briefly, she heard a "pop," looked up, and saw Thompson standing over the clerk, who had been shot. She and Thompson looked directly at one another, and then she started her car and drove away.
Another witness, Edward Faulk, walked to within a few feet of the store and saw Thompson come out of the shop carrying a gun. Thompson pointed the gun at Faulk and then ran away. Officer James was with-in several blocks of the shop when he got a call regarding the robbery. He saw Thompson walking down the street, and because he matched the description broadcast over the radio, stopped him. James found $108 and the ammunition clip from a 9-mm pistol in Thompson's pockets, and found a 9-mm pistol on the ground near where Thompson was standing. Officer James took Thompson back to the sandwich shop, where both Coltrain and Faulk identified him.
Thompson was charged, tried, and convicted of robbery with a firearm and first-degree murder. During the penalty phase, the State put on two witnesses: a probation officer, who testified that Thompson was on community control at the time of the crime, and the victim's mother, who described her son and the effect of his death on the family. The defense put on numerous witnesses, including Thompson's father, sister, and wife, and many friends and acquaintances. The jury recommended death by a vote of nine to *826 three on the first-degree murder count, and the judge imposed the death penalty, finding four aggravating circumstances[1] and several nonstatutory mitigating circumstances.[2] A consecutive twelve-year sentence was imposed on the robbery count. Thompson appeals his first-degree murder conviction and sentence of death, raising six issues.[3]
Thompson claims that the trial court erred in failing to grant a mistrial when the prosecutor, during closing argument, commented on the gun, bullet, and shell used in the murder. The prosecutor made the following statement:
[State's expert] Mr. Love testified that [the] gun that is in evidence that was at the defendant's feet is the murder weapon. He also indicated that the bullet, the shell and the gun are available for testing, anyone can repeat my test to determine whether or not 
Defense counsel objected, "By saying that, he's indicating to the jury that we should have had to prove something, we should have had to go and get a ballistics expert, and that's how they are going to read that."
The court overruled the objection, but gave a curative instruction stating that Thompson is not required to prove anything. The prosecutor then repeated the gist of his earlier statement: "The expended shell and the gun are available for anyone to see and examine that wants to." Thompson renewed his objection, which was overruled. Thompson claims that the court should have granted a mistrial. We disagree.
The prosecutor's statement was not a comment on the defendant's right to remain silent. The record shows that the prosecutor merely repeated what the State's ballistics expert had testified to at trial:
Q. The tests that you performed on all these items, can they be reproduced?
A. Certainly.
Q. Another examiner wanted to come in and look at them, could he reproduce your results?
A. Yes, sir.
We note that defense counsel did not object to the expert's testimony at the time it was originally presented. We find no error.
Thompson claims that the court erred in finding that the murder was committed in a cold, calculated, and premeditated manner. We agree. No one saw the actual shooting. The only witness in the immediate area, Marilyn Coltrain, was eating a sandwich in her car in front of the shop. She watched Thompson enter the store and converse with the clerk. She then looked away, heard a "pop," looked up, and saw Thompson standing over the victim. A number of scenarios inconsistent with heightened premeditation are possible: The victim may have struggled with Thompson; the victim may have tried to duck and hide from Thompson; or the victim may have tried to escape. The record simply does not show what happened in the brief time span when the witness looked away. We strike this aggravating circumstance.
Thompson next claims that the trial court erred in finding that the murder was committed to eliminate a witness. We agree. "We *827 have long held that in order to establish this aggravating factor where the victim is not a law enforcement officer, the State must show that the sole or dominant motive for the murder was the elimination of the witness." Preston v. State, 607 So.2d 404, 409 (Fla. 1992), cert. denied, ___ U.S. ___ 113 S.Ct. 1619, 123 L.Ed.2d 178 (1993). This was not shown beyond a reasonable doubt because again we do not know what happened during the time witness Coltrain looked away. We strike this aggravating circumstance.
Thompson claims that the court erred in finding that he was under sentence of imprisonment at the time of the crime. We agree. The trial court found as an aggravating circumstance that the "[d]efendant was under a community control sentence in two different cases, Number 87-1401 and Number 91-1720, when these offenses were committed." After Thompson was sentenced to death in the present capital case, however, the trial court in Case Nos. 87-1401 and 91-1720 granted Thompson's motion to dismiss an affidavit of violation of community control in those two cases on grounds that the sentences had been erroneously imposed. The sentences in Case Nos. 87-1401 and 91-1720 were illegal.[4]
"We have expressly held that a conviction used as an aggravating circumstance, which is valid at the time of the sentence but later reversed and vacated by an appellate court, results in an error in the penalty phase proceeding. The reversal eliminates the proper use of the conviction as an aggravating factor." Long v. State, 529 So.2d 286, 293 (Fla. 1988). We conclude that the same reasoning applies to an aggravating circumstance based on an illegal sentence. We strike this aggravating circumstance.
Having struck three aggravating circumstances, this leaves a single aggravating circumstance to support the death penalty, i.e., the murder was committed in the course of a robbery. "We have in the past affirmed death sentences that were supported by only one aggravating factor, but those cases involved either nothing or very little in mitigation." Songer v. State, 544 So.2d 1010, 1011 (Fla. 1989) (citation omitted). The present case, in contrast, involves significant mitigation, as documented in the record.
Accordingly, we affirm Thompson's first-degree murder conviction, but vacate the death penalty.[5] We remand for imposition of *828 a life sentence without possibility of parole for twenty-five years.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN and HARDING, JJ., concur.
WELLS, J., concurs in part and dissents in part with an opinion.
WELLS, J., concurring in part and dissenting in part.
I concur with the majority's decision to affirm the conviction and vacate the death penalty. I dissent from the decision to remand for imposition of a life sentence with no chance of parole for twenty-five years. I would vacate Thompson's death sentence and remand for a new penalty phase in which a properly instructed jury should consider whether to impose the death sentence.
I do not agree with the majority's decision to strike the cold, calculated, and premeditated aggravating factor. I recognize that this decision appears consistent with earlier decisions of this Court. See Lawrence v. State, 614 So.2d 1092 (Fla.), cert. denied, ___ U.S. ___, 114 S.Ct. 107, 126 L.Ed.2d 73 (1993); Hamblen v. State, 527 So.2d 800 (Fla. 1988); Rogers v. State, 511 So.2d 526 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). It is my view, however, that this decision is not consistent with legislative intent regarding the imposition of the death penalty in Florida.
The facts of this case present the very circumstances in which the Legislature, in passing the death penalty, intended that the penalty be imposed if a jury and trial judge determined that it should be imposed. This was an unprovoked, violent murder of a fast-food restaurant server which the trial court found to have been carried out by predesign during the course of a robbery. See Stein v. State, 632 So.2d 1361, 1366 (Fla.) ("The aggravating circumstance of cold, calculated, and premeditated focuses on the manner in which the crime was executed, i.e., the advance procurement of the murder weapon, lack of resistance or provocation, the appearance of a killing carried out as a matter of course."), cert. denied, ___ U.S. ___, 115 S.Ct. 111, 130 L.Ed.2d 58 (1994).
Moreover, I do not agree with the majority's conclusion that the record does not show how the murder transpired. The record indicates that defendant Thompson walked into a Subway sandwich shop around 1 a.m. At the time, a woman who had just purchased a sandwich was sitting in her car immediately outside the store and witnessed the murder through a store window. The witness testified:
A. I had my first bit[e] of sandwich, and I looked up and I saw this young man was about five feet inside the Subway, and he walked around and up the front aisle. He went up to the counter and he said something to the clerk and he waited for his answer, and then he appeared to start saying something else, and I looked back at my sandwich for a bite and 
Q. Did there appear to be any problem going on?
A. No, it was a very pleasant-looking man. He was smiling. He looked happy. And I didn't think anything of him being there. And while I was looking for the second bite of my sandwich, I heard this pop and raised my eyes, and I saw this man standing there with his arm like that, and all I could see was from here back, but then the recoil from the shot happened and a gun came into view. He had a gun in his hands, and I realized that he just shot that Subway clerk and he was probably going to shoot me next because I was too close to get away, you know, and as soon as I thought, he turned and looked me right in the eyes 
And I was just frozen by, you know, looking at him, and all I could do was pray and I prayed, and I was able to get the sandwich down and reach over and start the car and put it in reverse. As the car started backing up, I looked at him and he was watching me, and he sort of looked pleased at me, kind of a half smile on his face.
In addition to this eyewitness account, photographic and medical evidence revealed that the victim was shot in the top of the head. Additional evidence indicated that the victim was making a sandwich at the time he was *829 shot and that, following the murder, Thompson took money from the store's cash register.
The trial court stated in the "Order Stating Reasons for Imposition of Death Sentence":
The capital felony was a homicide and was committed in a cold, calculated and premeditated manner without any presence of moral or legal justification. In addition to those circumstances recited above, the Court notes these additional facts: the defendant entered the shop with the weapon concealed from the victim; the ballistics expert testified this semi-automatic pistol is activated or cocked by sliding the upper panel of the pistol back so that a bullet is ejected from a clip in the handle into the firing chamber; that this action is audible and apparent; that this weapon did not have a sensitive trigger susceptible to accidental firing; the victim Carl Lenzo was not aware the defendant was armed or that he had readied the pistol to be fired because Carl Lenzo never looked up or was aware he was going to be shot; the defendant executed his plan through purposeful preparation taken before he entered the premises where Carl Lenzo was working. These circumstances establish this aggravating factor beyond a reasonable doubt. Johnson v. State, 608 So.2d 4, 11 (Fla. 1992).
I agree with the trial court that this violent murder falls within the definition of the cold, calculated, and premeditated aggravating factor.
To support a finding that a murder is cold, calculated, and premeditated there must be a showing of a plan or prearranged design. Rogers, 511 So.2d at 533. Here, the trial court found a prearranged design, and I conclude that this finding is supported by the record. Accordingly, we should adhere to the rule that precludes striking the cold, calculated, and premeditated aggravator and thereby substituting our judgment for that of the trial court, when there is a legal basis to support the factor. Occhicone v. State, 570 So.2d 902, 905 (Fla. 1990), cert. denied, 500 U.S. 938, 111 S.Ct. 2067, 114 L.Ed.2d 471 (1991).
I agree with the majority that there is no record basis to find the murder was committed to eliminate a witness or that Thompson was under sentence of imprisonment at the time of the crime. However, the elimination of these two aggravators should not negate the authority of the jury and trial judge to decide whether to impose the death penalty in a new penalty proceeding. Because these two aggravators should not have been considered by the jury and trial judge in sentencing, I would remand for a new penalty phase by a jury and the trial judge. In the remanded proceeding, the trial judge should use the new jury instruction we recently approved in Jackson v. State, 648 So.2d 85 (Fla. 1994).
NOTES
[1] The judge found that Thompson committed the murder while under sentence of imprisonment; that he committed the murder during the course of a robbery; that he committed the murder to eliminate a witness; and that he committed the murder in a cold, calculated, and premeditated manner.
[2] The judge found that Thompson was a good parent and provider, and that he had exhibited no violent propensities prior to the killing. Though discounting its mitigating value, the court also noted in its sentencing order that Thompson received an honorable discharge from the Navy; that he "maintained, regular, gainful employment"; that he was "raised in the church"; that he "possess[es] some rudimentary artistic skills"; and that he "has been a good prisoner and has not been a discipline problem."
[3] Thompson claims that the trial court erred on the following points: 1) in failing to grant a mistrial when the prosecutor commented on the defendant's right to remain silent by arguing in closing that the bullet, shell, and gun were available for testing by anyone; 2) in finding that the murder was committed in a cold, calculated, and premeditated manner; 3) in finding that the murder was committed to eliminate a witness; 4) in finding that Thompson was under sentence of imprisonment; 5) in imposing death under disproportionate circumstances; and 6) in admitting victim impact evidence.
[4] On June 24, 1987, Thompson pled no contest to grand theft (Count 1) and uttering a forged instrument (Count 2) in Case No. 87-1401, and was placed on two consecutive one-year terms of probation. A warrant for violation was filed on November 8, 1988, after the term of probation on Count I had expired but before that on Count 2 had ended. Thompson pled nolo to the violation and was sentenced on March 30, 1990, to six months community control on Count 1 and three months community control on Count 2.

Thompson was charged on December 5, 1990, with violation of community control in Case No. 87-1401; entered a plea of nolo to the violation on September 4, 1991; and was sentenced to another year of community control. On September 4, 1991, he also entered a plea of nolo to three new offenses, forgery, uttering a forged instrument, and grant theft in Case No. 91-1720, and was sentenced to one year community control on these offenses to run concurrently with the sentence in Case No. 87-1401.
Thompson was subject to these two concurrent one-year terms of community control at the time of the murder, and the trial court found this as an aggravating circumstance: "Defendant was under a community control sentence in two different cases, Number 87-1401 and Number 91-1720, when the [murder] was committed." After Thompson was sentenced to death in the capital case, the trial court in the prior offenses granted his motion to dismiss the violation of community control affidavit filed in Case Nos. 87-1401 and 91-1720, on the following grounds.
When Thompson violated probation in 1988, he had already completed serving the one year of probation on Count 1 of Case No. 87-1401. Thus, the court erred in sentencing him to six months community control on this count on March 30, 1990. When he was charged with violating community control on December 5, 1990, the only legal sentence he had been serving, three months community control on Count 2, had already expired. Thus, there was no true violation. Accordingly, the court's sentence on December 4, 1991, of one year community control in Case No. 87-1401 for violation was illegal. Further, the court's sentence on the same date of one year community control in Case No. 91-1720 was also illegal since the court at sentencing took into consideration the erroneous fact that Thompson had been on community control in Case No. 87-1401 when he committed the crimes in Case No. 91-1720.
[5] The remainder of Thompson's claims are moot.