705 So.2d 1364 (1998)
Omar Shareef JONES, Appellant,
v.
STATE of Florida, Appellee.
No. 84840.
Supreme Court of Florida.
January 15, 1998.
*1365 Judith Dougherty, Special Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General, and Curtis M. French, Assistant Attorney General, Tallahassee, for Appellee.
PER CURIAM.
We have on appeal the judgment and sentence of the trial court imposing the death penalty upon Omar Shareef Jones. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the first-degree murder conviction but reverse the death sentence and remand for imposition of a life sentence without possibility of parole for twenty-five years.
During the evening of November 4, 1993, Omar Jones  who was nineteen years old at the time  and Ellis Curry drank beer and smoked marijuana and then accepted a ride in a car occupied by two friends, Jerome Goodman and Marlon Hawkins. The group drove to the local high school to find a person who owed Goodman money. Hawkins was carrying a gun and after the group argued over it ("[E]verybody was like, `Give it to me, give it to me.'"), Jones said, "Give me the gun before one of us might do something crazy" and took possession of it. The group entered the school grounds at about 10 p.m. and came upon two boys, Jefferson Mitchell and a friend. Jones approached Mitchell and asked if he had any money. When Mitchell said, "No," Jones shot him twice  first in the leg and then, when Mitchell bent over, in the top of the head. Jones fled the scene, exclaiming, "What happened?," and was hysterical when he reached the car.
Jones was arrested early the next morning and confessed to the shooting (he said it was an accident), and when police told him that Mitchell was fourteen years old and that he had died, Jones cried and exclaimed, "I killed a baby." Jones was charged with first-degree murder and attempted robbery and was convicted on both counts. The trial court followed the jury's seven-to-five recommendation and imposed a sentence of death on the first-degree murder count based on one aggravating circumstance,[1] no statutory mitigating circumstances, and little nonstatutory mitigation.[2] The court imposed a consecutive thirty-year term on the attempted robbery count.
Jones raises ten issues on appeal[3] but we find a single claim dispositive. He *1366 asserts that his death sentence is disproportionate. We agree. The people of Florida have designated the death penalty as an appropriate sanction for certain crimes,[4] and in order to ensure its continued viability under our state and federal constitutions "the Legislature has chosen to reserve its application to only the most aggravated and unmitigated of [the] most serious crimes." State v. Dixon, 283 So.2d 1, 7 (Fla.1973) (emphasis added).[5] Accordingly, while this Court has on occasion affirmed a single-aggravator death sentence, it has done so only where there was little or nothing in mitigation. See Nibert v. State, 574 So.2d 1059, 1063 (Fla.1990) ("[T]his Court has affirmed death sentences supported by one aggravating circumstance only in cases involving `either nothing or very little in mitigation.'"); Songer v. State, 544 So.2d 1010, 1011 (Fla.1989) ("We have in the past affirmed death sentences that were supported by only one aggravating factor ... but those cases involved either nothing or very little in mitigation."). See also Thompson v. State, 647 So.2d 824, 827 (Fla.1994) (same). To rule otherwise on this issue would put Florida's entire capital sentencing scheme at risk.[6]
In the present case, as noted above, the court found but one aggravating circumstance,[7] and our review of the record reveals copious unrebutted mitigation. The defense expert, Dr. Krop, attested to the following: Jones was born two months prematurely, suffered periods as an infant when he turned blue due to lack of oxygen, and was diagnosed by EEG testing at two months old as organically brain damaged; he is learning disabled, was consistently classified as borderline retarded in school, was placed in special education classes, has an IQ of seventy-six, and reads at the first-grade level; he has the mental age of a child.
Jones quit school when he was eighteen (one year before the present crime) because he had been held back so many times he could no longer fit in, and although he tried to obtain jobs, he could not fill out the applications. According to psychological testing, Jones consistently scored his lowest marks in the sub-test measuring judgment, and Dr. Krop testified that Jones' impulsivity and lack of judgment in a stressful situation would be exacerbated by drugs and alcohol. After the shooting, Jones was distraught and hysterical and was seen that night crying by himself. He cried the next day when police told him the victim's age and that he had died. We note that the jury voted for death by the narrowest of margins, seven to five.
We find Jones' sentence of death disproportionate to other single-aggravator cases wherein we reversed the death penalty. See Thompson v. State, 647 So.2d 824 (Fla.1994) (reversing death sentence for shooting death of fast food worker  the victim was summarily shot in the top of the head, just like in the present case  where commission during a robbery was the sole aggravating circumstance).[8] In fact, the present case has more *1367 unrebutted mental health mitigation than all the other cases cited herein combined.[9] We find the remainder of Jones' claims to be either moot[10] or without merit.[11]
In conclusion, we note that this was an extraordinarily tragic crime  the senseless and unprovoked killing of a schoolboy  and is every parent's worst nightmare. The applicable law, however, is established, simple, and clear: Under Florida's capital sentencing scheme, death is not indicated in a single-aggravator case where there is substantial mitigation.[12] Although this legal precept  and indeed the rule of objective, dispassionate law in general  may sometimes be hard to abide, the alternative  a Court ruled by emotion  is far worse.
We affirm the convictions and the consecutive thirty-year sentence for attempted robbery. We reverse the death sentence and remand for imposition of a life sentence without possibility of parole for twenty-five years on the first-degree murder count.
It is so ordered.
KOGAN, C.J., OVERTON, SHAW, HARDING and ANSTEAD, JJ., and GRIMES, Senior Justice, concur.
WELLS, J., concurs as to convictions and dissents with an opinion as to sentence.
WELLS, Justice, dissenting.
I dissent because I conclude that I should respect the decision of the jury in recommending death and the decision of the trial judge in imposing death for this intentional killing of a school student on school property during an attempted armed robbery. The trial judge wrote an extensive sentencing order explaining his decision, and I refuse to reweigh the aggravation-mitigation evidence under the label of a proportionality review.
Furthermore, I disagree with the majority's opinion that, under the circumstances of this tragic murder, one aggravating factor was insufficient.
NOTES
[1] The court found that the murder was committed during the course of a robbery and for pecuniary gain. The court noted in its order: "These two aggravating factors merge and shall be considered by the court as only one aggravating factor."
[2] The court considered and weighed the following proposed mitigators: Jones has a mental age of thirteen or fourteen years, no weight; Jones was nineteen at the time of the crime, no weight; Jones was substantially impaired, not established; Jones has organic brain damage and an IQ of seventy-six, not proved or not meaningful; Jones has artistic ability, no significance; Jones had a disadvantaged childhood, no weight; Jones has a caring and helpful disposition, no weight; Jones contributed to the lives of others, not established and no weight; Jones cooperated with police, not established; Jones was remorseful, not genuine; Jones tried to find employment but was hampered by his learning disability, little weight; Jones offered to plead guilty in exchange for a life sentence, no weight.
[3] Jones claims that the trial court erred on the following points: (1) judgment of acquittal as to premeditated murder; (2) right to present a defense witness; (3) overreaching tactics by the prosecutor; (4) change of venue; (5) suppression of Jones' statement; (6) jury selection error; (7) death is disproportionate; (8) victim impact evidence; (9) denying requested instructions; (10) denying pretrial motions.
[4] See § 775.082, Fla. Stat. (1993).
[5] See, e.g., Terry v. State, 668 So.2d 954, 965 (Fla.1996) ("Consequently, its application is reserved only for those cases where the most aggravating and least mitigating circumstances exist."); Kramer v. State, 619 So.2d 274, 278 (Fla. 1993) ("Our law reserves the death penalty only for the most aggravated and least mitigated murders....").
[6] See Gregg v. Georgia, 428 U.S. 153, 188, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976)("Because of the uniqueness of the death penalty, Furman held that it could not be imposed under sentencing procedures that created a substantial risk that it would be inflicted in an arbitrary and capricious manner."). See generally State v. Dixon, 283 So.2d 1, 8 (Fla.1973) ("Again the sole purpose of [appellate review] is to provide the convicted defendant with one final hearing before death is imposed. Thus, it again presents evidence of legislative intent to extract the penalty of death for only the most aggravated, the most indefensible of crimes. Surely such a desire cannot create a violation of the Constitution.").
[7] See supra note 1.
[8] See also Sinclair v. State, 657 So.2d 1138 (Fla. 1995) (reversing death sentence for shooting death of cab driver where pecuniary gain and commission during a robbery were sole merged aggravator); Nibert v. State, 574 So.2d 1059 (Fla. 1990) (reversing death sentence for stabbing death of friend where heinous, atrocious, or cruel (HAC) was sole aggravator); Smalley v. State, 546 So.2d 720 (Fla.1989) (reversing death sentence for beating death of child where HAC was sole aggravator); Lloyd v. State, 524 So.2d 396 (Fla.1988) (reversing death sentence for shooting death of woman at home where commission during a robbery was sole aggravator).
[9] See id.
[10] Claim 8 is moot.
[11] The following claims are without merit: 1-6, 9, 10.
[12] See Thompson v. State, 647 So.2d 824, 827 (Fla.1994); Nibert v. State, 574 So.2d 1059, 1063 (Fla.1990); Songer v. State, 544 So.2d 1010, 1011 (Fla.1989). But cf. Burns v. State, 699 So.2d 646 (Fla.1997) (affirming death sentence for shooting death of police officer where three merged aggravators were posed against several mitigators).