707 So.2d 683 (1998)
Samuel Francis WILLIAMS, Appellant,
v.
STATE of Florida, Appellee.
No. 88745.
Supreme Court of Florida.
February 12, 1998.
Nancy A. Daniels, Public Defender, and W.C. McLain, Assistant Public Defender, *684 Second Judicial Circuit, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General, and Mark S. Dunn, Assistant Attorney General, Tallahassee, for Appellee.
PER CURIAM.
We have on appeal Samuel Francis Williams' conviction of first-degree murder and sentence of death. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution. For the reasons discussed below, we affirm the conviction of first-degree murder but vacate the death sentence and remand for imposition of a life sentence without eligibility for parole.[1]
Williams was convicted of the first-degree murder of Bobby Burke. At about 10:20 on the night of September 27, 1994, Mr. Burke went from his house to the street to take out the garbage and to feed some scraps of food to neighborhood cats. Soon thereafter, Mrs. Burke, who was in the bedroom turning down the spread, heard several pops she thought were firecrackers. When Mrs. Burke went to the front porch to meet her husband, she found him shot and bleeding to death in the street at the front of their home. She immediately called 911. When a fire-rescue squad arrived, Mr. Burke had vital signs but was unconscious and unresponsive. He was pronounced dead upon arrival at the hospital. The medical examiner's testimony revealed that Mr. Burke had been shot eight times.[2] Thirteen shell casings were found at the scene.[3]
Police questioned several individuals who were in the area at the time of the murder. One of them, Darren Smith, told police that, as he was walking to a friend's house, he witnessed Williams confront Mr. Burke and shoot him. Based on this information, Williams became a suspect and was subsequently charged with first-degree murder. At trial, witnesses testified that Williams told them that he only intended to rob Mr. Burke. But when Mr. Burke "bucked him" (resisted), Williams killed him.
The jury convicted Williams of first-degree murder and carrying a concealed firearm.[4] The jury recommended death by a vote of eight to four, and the court agreed with the jury's recommendation. The court found two aggravating circumstances: (1) the capital felony was committed by a person under a sentence of imprisonment;[5] and (2) the capital felony was committed for pecuniary gain.[6] The only statutory mitigator the court found was that Williams was eighteen years old at the time of the murder, which the court gave substantial weight. The court found six nonstatutory mitigators: (1) Williams was an exemplary prisoner while awaiting trial (little weight); (2) Williams obtained his G.E.D. while in jail (slight weight); (3) Williams could be rehabilitated if given a life sentence (some weight); (4) Williams found religion in jail (very little weight); (5) Williams intends to become involved in a prison ministry *685 should he receive a life sentence (very slight weight); and (6) Williams has a capacity to work hard (slight weight). Williams raises three issues in this appeal.[7]
Williams' arguments regard only the penalty phase of his trial. However, we have reviewed the record and conclude that there is competent, substantial evidence to support the verdict and judgment of guilt for first-degree murder. Moore v. State, 701 So.2d 545 (Fla.1997); Terry v. State, 668 So.2d 954, 964 (Fla.1996); Spinkellink v. State, 313 So.2d 666, 671 (Fla.1975).
In his first argument, Williams claims that the trial court erred in finding as an aggravating circumstance that Williams was under a sentence of imprisonment at the time of the murder. Specifically, Williams contends that confinement to a secure juvenile facility is not imprisonment under section 921.141(5)(a), Florida Statutes (1993). This argument raises an issue of first impression. In its sentencing order, the trial court found as an aggravating factor the following:
The Defendant committed the capital felony while under a sentence of imprisonment pursuant to Florida Statute 921.141(5)(a). The evidence presented during the penalty phase proceeding proved beyond a reasonable doubt that the Defendant, while a juvenile, was convicted in the State of Louisiana for the offense of robbery, and that while incarcerated in a juvenile facility attained seventeen years of age, the age of majority in Louisiana. After attaining adult status under Louisiana law, the Defendant escaped from said facility. Thereafter, the State of Louisiana issued an adult arrest warrant for the Defendant for the offense of escape. The evidence is uncontroverted that the Defendant was eighteen years of age at the time of the murder of Bobby Burke and that the Defendant was still a fugitive from justice from the State of Louisiana with adult status. This aggravating factor has been proved beyond a reasonable doubt.
During the penalty phase, the State introduced testimony regarding Williams' escape from the LTI. Lieutenant Colonel Reese London, Jr., a shift captain at the LTI, testified that Williams escaped by placing an object in a counselor's door, cutting a window screen, going out a door on the northeast side of the campus behind a warehouse, and cutting another fence. After discovering the escape, Colonel London issued an adult warrant for Williams' arrest.[8]
The State contends that the "under sentence of imprisonment" aggravator is logically supported by reasoning that a person cannot escape unless that person is imprisoned. The State begins its analysis with section 39.061, Florida Statutes (1995). The State reasons that because section 39.061, Florida Statutes (1995), makes escape from a secure juvenile detention facility or residential commitment facility a third-degree felony, the legislature must have intended juvenile confinement to be considered a sentence of imprisonment under section 921.141(5)(a), Florida Statutes (1993). Thus, the State concludes that because Williams was subject to an adult penalty for escaping, he must have been imprisoned. We do not agree.
In accord with the plain language of the statute and prior case law, we hold that confinement to a juvenile facility pursuant to an adjudication of delinquency is not a "sentence of imprisonment" as contemplated under *686 section 921.141(5)(a), Florida Statutes (1993). In defining "imprisonment" we look to the legislature's use of that term in other legislation. In section 775.082, Florida Statutes (1993), the legislature uses the term "imprisonment" in setting out the penalties for adult criminal convictions. However, in delineating the disposition alternatives for an adjudicated delinquent in section 39.054, Florida Statutes (1993), the legislature uses the term "commitment." See, e.g., § 39.054(1)(h), Fla. Stat. (1993) ("Any commitment of a child to a program or facility for serious or habitual delinquent children offenders shall be for an indeterminate period of time, but the time shall not exceed the maximum term of imprisonment that an adult may serve for the same offense.") (emphasis added) (illustrating the distinction the legislature has drawn between juvenile confinement and adult imprisonment). We find the legislature's use of the term "commitment" to be a clear indication of legislative intent that juveniles are not imprisoned when placed in the custody of the State pursuant to an adjudication of delinquency.
This is in accord with this State's approach that juvenile offenders are to be treated differently than adult offenders in the criminal justice system. Florida case law makes it clear that juvenile confinement is not to be equated with adult imprisonment. As we recently affirmed, under Florida law, juvenile delinquency proceedings exist to rehabilitate juvenile offenders in order to prevent them from becoming adult offenders, not to punish them. P.W.G. v. State, 702 So.2d 488 (Fla. 1997). See also In re C.J.W., 377 So.2d 22, 24 (Fla.1979), in which we stated:
A child offender, even after being adjudged delinquent, is never held to be a criminal, even if the act would be considered a crime if committed by an adult. The key to this difference in approach lies in the juvenile justice system's ultimate aims. Juveniles are considered to be rehabilitatable. They do not need punishment. Their need lies in the area of treatment. Therefore, while a juvenile whose liberty the state seeks to restrain must be afforded a certain minimum standard of due process, it has never been held that he enjoys the full panoply of procedural rights to which one accused of a crime is entitled.
Id. Moreover, the United States Supreme Court has held that many of the constitutional restrictions imposed on states in prosecuting adult defendants do not apply in juvenile proceedings because of the inherent differences in the two proceedings. See McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (juveniles are not constitutionally entitled to jury trial). Accordingly, we conclude that juvenile confinement is not a "sentence of imprisonment" as contemplated in section 921.141(5)(a), Florida Statutes (1993). Therefore, we must strike this aggravator.
Next, Williams argues that with the "under sentence of imprisonment" aggravator stricken, his death sentence is disproportionate. We agree. In making this determination of proportionality, we are always guided by the test laid out in State v. Dixon, 283 So.2d 1, 8 (Fla.1973), that the death penalty is reserved for "only the most aggravated, [and] the most indefensible of crimes." After striking the "under sentence of imprisonment" aggravator in this robbery-murder case, we are left with only one statutory aggravator. Based on our review of the record and a comparison of the relevant cases, we conclude that Williams' sentence was not proportionate to others similarly situated. Terry; Sinclair v. State, 657 So.2d 1138 (Fla.1995); Thompson v. State, 647 So.2d 824 (Fla.1994); Jones v. State, 705 So.2d 1364 (Fla.1998).
Because we find that a death sentence is disproportionate in this case, we do not reach Williams' final claim. Accordingly, we affirm the first-degree murder conviction, vacate the death penalty, and remand for the imposition of a life sentence without eligibility for parole.
It is so ordered.
KOGAN, C.J., OVERTON, SHAW, HARDING and ANSTEAD, JJ., and GRIMES, Senior Justice, concur.
WELLS, J., concurs in part and dissents in part with an opinion.
*687 WELLS, Justice, concurring in part and dissenting in part.
I concur in the affirmance of the conviction.
I also concur that the "under sentence of imprisonment" aggravator must be stricken. Even if the statute clearly set forth that juvenile detention could be considered as a basis for this aggravator, the record in this case is deficient, as the majority points out, majority op. at 3 n. 8, in that the reason Williams was at the Louisiana Training Institute facility at the time he was alleged to have escaped is not proven.
I dissent from that part of the majority opinion which holds that Williams' death sentence is disproportionate after striking this aggravator. I would remand for a new penalty proceeding. Williams' abhorrent actions here and his reckless indifference to human life provide a substantial basis for the jury's death recommendation and the subsequent death sentence imposed by the trial court. This Court has repeatedly stated that proportionality review is not simply a comparison between the number of aggravating and mitigating circumstances. Terry v. State, 668 So.2d 954, 965 (Fla.1996); Sinclair v. State, 657 So.2d 1138, 1142 (Fla.1995). Rather, proportionality review involves a consideration of the totality of the circumstances of the case and a comparison of those circumstances with other capital cases. Sliney v. State, 699 So.2d 662, 672 (Fla.1997); Burns v. State, 699 So.2d 646, 649 (Fla.1997); Sager v. State, 699 So.2d 619, 623 (Fla.1997).
After reviewing the instant record, the only common denominator between this case and the cases cited by the majority in reversing the death sentence is that there was only one aggravating circumstance. This alone is not a proper basis for overturning a death sentence, and in fact, we have previously sustained a death sentence where there was only one aggravating circumstance. See LeDuc v. State, 365 So.2d 149 (Fla.1978), cert. denied, 444 U.S. 885, 100 S.Ct. 175, 62 L.Ed.2d 114 (1979).
In Terry, the defendant was convicted of murdering a gas station patron during a robbery. This Court reversed defendant's death sentence because it found there was sufficient record evidence to support the defense theory that the murder was the result of a robbery gone bad. Terry, 668 So.2d at 954. In Sinclair, the defendant was convicted of shooting a cab driver during a robbery. At trial, the defendant testified that he only intended to scare the cab driver with the gun, but the gun accidentally discharged. The only aggravator found was that the murder was committed during a robbery. This Court held that substantial mitigation outweighed the aggravation. Sinclair, 657 So.2d at 1143.
In Thompson, the defendant was convicted of shooting a subway sandwich shop employee once in the head. The sole witness testified that she saw the defendant enter the shop and that while she was not looking, she heard a pop; then, when she looked up, she saw defendant standing over the clerk, who had been shot. After striking three aggravators, the sole aggravator was that the murder was committed during a robbery. This Court held that the sole aggravator, when pitted against significant mitigation, rendered the death penalty disproportionate. Thompson, 647 So.2d at 827. In Jones, the defendant was convicted of murdering a student on school property during an attempted robbery. There was only one valid aggravator. This Court held that the "copious unrebutted mitigation" found in the record outweighed the aggravation.
In the instant case, the record proves that an unarmed Mr. Burke was shot eight timesfive times in his chest, once in his neck, once in a finger, and once in his back. As the medical examiner testified, the shot in the back was fired from a distance of no further than ten inches and the bullet's trajectory was consistent with Mr. Burke lying face down on the pavement or on all fours when shot. Thus, after Mr. Burke was lying on the ground, no longer capable of posing a threat, Williams shot Mr. Burke in the back. Furthermore, the record establishes that thirteen shell casings were found at the scene. The weapon alleged to have been used could carry no more than thirteen bullets.
*688 Moreover, the instant case is further distinguishable in that the only mitigation given significant weight was Williams' age at the time of the murder. Based on the record of this evidence, the jury could properly conclude that this case was among the most aggravated and least mitigated of murders. See State v. Dixon, 283 So.2d 1 (Fla.1973).
Accordingly, I would remand this case to the trial court for a new penalty proceeding with the caveat that the jury not be allowed to consider section 921.141(5)(a), Florida Statutes (1993), as an aggravating circumstance.
NOTES
[1] Section 775.082(1)(a), Florida Statutes (Supp. 1994), which provides that a defendant sentenced to life imprisonment for first-degree murder is ineligible for parole, became effective on May 25, 1994. Ch. 94-228, § 1, Laws of Fla. Because the murder here occurred after the amended statute's effective date, Williams is ineligible for parole.
[2] Dr. McConnell, the medical examiner, testified that Mr. Burke was shot a total of eight times. Mr. Burke sustained five bullet wounds to his chest, one to his neck, one to a finger, and one to his back. Dr. McConnell also testified that the trajectory of the bullet wound in the back was consistent with the victim lying face down on the ground or being on all fours when shot. Dr. McConnell further testified that one of the bullet wounds to the chest and the one to the back were fired from a distance of no further than ten inches.
[3] The weapon that the State argued Williams used, .22 caliber semi-automatic pistol, carries a maximum of thirteen roundstwelve in a clip and one in the chamber.
[4] The charge of carrying a concealed firearm was not connected with the murder charge and was consolidated for trial purposes only. Williams does not challenge this conviction.
[5] § 921.141(5)(a), Fla. Stat. (1993). This aggravator was based on testimony that, at the time of the murder, Williams was a fugitive from Louisiana. Williams had been confined to the Louisiana Training Institute (LTI), a secure juvenile facility. After attaining majority age (seventeen) in Louisiana, Williams escaped from the LTI and has been a fugitive since.
[6] § 921.141(5)(f), Fla. Stat. (1993).
[7] Williams claims that: (1) the trial court erred in finding that confinement to a juvenile detention facility was a "sentence of imprisonment" under section 921.141(5)(a), Florida Statutes (1993); (2) his death sentence is disproportionate; and (3) the court erred in allowing the prosecutor's improper comments regarding the weighing of aggravating and mitigating circumstances.
[8] We note that the record here is totally devoid of any evidence which would indicate that Williams was sentenced to the LTI facility as a result of an adjudication of delinquency for robberya finding made by the trial court in support of the aggravator. The only reference in the record indicating why Williams was at the LTI was a comment made by the prosecutor during a Williams rule hearing which predated the penalty phase. This extrajudicial comment, of course, is not evidence. Based upon the evidence which was in the record for consideration in the penalty phase, the State failed to meet its burden of proving this aggravator beyond a reasonable doubt. See Gorham v. State, 454 So.2d 556, 559-60 (Fla.1984).