LABARGA, J.,
concurring in part and dissenting in part.
I concur in the majority decision to affirm the denial of postconviction relief as to the guilt phase. I dissent, however, to affirmation of the denial of relief as to the claim of ineffective assistance of counsel in the penalty phase. Defense counsel presented only two witnesses in mitigation. Counsel chose to proceed to the penalty phase just one day after the conclusion of the guilt phase, even though many of what penalty phase counsel Watts described as his “best” mitigation witnesses, not having been subpoenaed, failed to appear to testify as planned. Watts provided a purportedly strategic reason for going ahead without his full mitigation presentation— he believed the jury would be less favorable if the penalty phase was delayed and he believed the mitigation witnesses were reluctant and would therefore be less than helpful. The fact that the only two witnesses he presented turned out to be less favorable than expected — an understatement considering Butler’s sister related a dream in which God told her Butler committed the murder-suggests that counsel failed to adequately prepare their testimony. This failure became even more crucial when the remaining mitigation witnesses failed to appear.
As the majority notes, majority op. at 660-61 note 6, at the evidentiary hearing, defense counsel Borghetti could not explain her reasons for not presenting the testimony of Dr. Alfred Fireman, a forensic psychiatrist, to testify to mental health mitigation, even though a notice of intent to call Dr. Fireman was filed. Borghetti testified only that if Dr. Fireman was not called as a witness, it was most likely because of a strategic defense reason. She did not share that reason with the postconviction court. Watts’ explanation for not presenting mental health mitigation to the jury through Dr. Michael Maher was that he did not believe that presentation of Butler’s mental defects would be helpful. He testified, “I wasn’t interested in showing that he had any mental defects.” He also justified that decision by stating, “If there is a notion that there may be fingering doubt, we wouldn’t want to show that his profile would be that of a perpetrator in a case like this.” Watts did *673 not explain what portion of the mental mitigation would have portrayed Butler as a “perpetrator.” Moreover, it is well established that lingering doubt is not proper mitigation in the penalty phase. See, e.g., Williamson v. State, 961 So.2d 229, 237-38 (Fla.2007) (reiterating that “residual or lingering doubt ... is not an appropriate matter to be raised in mitigation during the penalty phase proceedings in a capital case.”) (quoting Rose v. State, 675 So.2d 567, 572 n. 5 (Fla.1996)). Thus, lingering doubt does not qualify as a reasonable strategic reason for failing to present available mental mitigation.
The explanations given by counsel do not reflect reasonable strategic choices by counsel under the circumstances in this case. This Court explained in Willacy v. State, 967 So.2d 131, 143 (Fla.2007):
“Under Strickland, ‘counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.’” Marshall v. State, 854 So.2d 1235, 1247 (Fla.2003) (quoting Strickland, 466 U.S. at 691, 104 S.Ct. 2052); see also Carroll v. State, 815 So.2d 601, 614-615 (Fla.2002) (same).
Id. at 143. Moreover,
strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.
Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (quoting Strickland v. Washington, 466 U.S. 668, 690-91, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Therefore, strategic decisions must follow a reasonable and thorough investigation. In assessing the reasonableness of an attorney’s investigation “a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further.” Wiggins, 539 U.S. at 527, 123 S.Ct. 2527. In my view, counsel in the present case made neither a reasonable investigation nor reasonable strategic choices based on the investigation they did undertake.
The defense did present Dr. Maher at the subsequent Spencer hearing, although his testimony was fairly limited in scope and content. He testified that he was asked to review the case “within some relatively defined hypothetical parameters ... that there was a first-degree murder conviction and that there was cocaine present at and around the time of the alleged behavior.” He interviewed Butler for about two hours but did not review extensive materials on the case. His testimony was limited to explaining that cocaine use at the time of the crime could cause “per-severation” or the repeated engaging in some action past a point where it serves a rational purpose. Counsel later argued to the judge that this trait related to the nature of the crime committed in the case, involving as it did repeated stabbing. Dr. Maher also testified, based on hypothetical facts, concerning whether violence such as that Butler experienced as a child — his father was accused of killing his mother— would make that person more at risk of engaging in violent activities as an adult, especially if he or she is involved in drugs or dysfunctional social activities. He opined that it would. Dr. Maher did not review Butler’s education or family history and did not discuss Butler’s mental or educational deficits. He also did not discuss how violence perpetrated against Butler or how the deprivations he endured as a child might have affected Butler’s subsequent development and behavior.
*674 The majority describes at length the body of mitigation evidence that was presented at the evidentiary hearing in this postconviction proceeding. Butler’s great-aunt described the tragic history of Butler’s early life. Shirley Furtick described the biophysical assessment she performed and provided additional confirmation of Butler’s sad childhood during which he lived with his grandmother and several other children in a shack -with no electricity or running water. Butler was forced to work in tobacco fields and went without sufficient food or clothing.[11] She testified that the children were beaten if they did not go to work in the fields as ordered. Dr. Glenn Caddy provided evidence of Butler’s emotional and mental problems as a child — Butler did very poorly in school, was slow, had an extreme fear of the dark, and suffered from stuttering and bedwet-ting. Dr. Caddy also testified that Butler began his years of alcohol and drug abuse early and upon administration of the Hal-stead Impairment Index test displayed a serious impairment in reasoning.
Despite the limited mitigation presented at trial, and the substantial body of mitigation evidence presented during the eviden-tiary hearing, the postconviction court denied the claim of ineffective assistance of counsel, finding that the “essence” of this “extensive testimony” of additional mitigation was presented at trial because the jury heard that Butler grew up poor, lost his mother and grandmother at an early age, had little education, and “some problem with substance abuse.” The majority concludes that prejudice has not been shown because the additional mitigation “does not materially alter the sentencing profile that was presented to the jury and to the trial court.” Majority op. at 665. I strenuously disagree with this assessment.[12]
Although the jury knew Butler grew up poor, they were deprived of the tragic details of the life Butler endured as a child in his violent environment. While the jury *675 heard evidence that he had “some problem with substance abuse,” they were deprived of details of the extent of that abuse, including the fact that he began using alcohol in his early teens and continued to drink heavily as an adult, and the effects that result from such abuse. The United States Supreme Court held in Porter v. McCollum, 558 U.S. 30, 130 S.Ct. 447, 175 L.Ed.2d 398 (2009), that this Court made an unreasonable application of Strickland when it concluded that Porter was not prejudiced by counsel’s failure to investigate and present certain mitigation, including mental mitigation disclosed at Porter’s postconviction evidentiary hearing. In addition to a brain abnormality, Porter had difficulty reading and writing, and limited schooling. Porter also had a childhood history of physical abuse. Id. at 454. Indeed, in considering the mental mitigation presented at Porter’s postconviction evi-dentiary hearing, the United States Supreme Court noted:
The Florida Supreme Court either did not consider or unreasonably discounted the mitigation evidence adduced in the postconviction hearing. Under Florida law, mental health evidence that does not rise to the level of establishing a statutory mitigating circumstance may nonetheless be considered by the sentencing judge and jury as mitigating. See, e.g., Hoskins v. State, 965 So.2d 1, 17-18 (Fla.2007) (per curiam). Indeed, the Constitution requires that “the sen-tencer in capital cases must be permitted to consider any relevant mitigating factor.” Eddings v. Oklahoma, 455 U.S. 104, 112, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). Yet neither the postconviction trial court nor the Florida Supreme Court gave any consideration for the purpose of nonstatutory mitigation to Dr. Dee’s testimony regarding the existence of a brain abnormality and cognitive defects. While the State’s experts identified perceived problems with the tests that Dr. Dee used and the conclusions that he drew from them, it was not reasonable to discount entirely the effect that his testimony might have had on the jury or the sentencing judge.
Porter, 130 S.Ct. at 454-55 (footnote omitted). The Supreme Court concluded: “We do not require a defendant to show ‘that counsel’s deficient conduct more likely than not altered the outcome’ of his penalty proceeding, but rather that he establish ‘a probability sufficient to undermine confidence in [that] outcome.’ Strickland, 466 U.S. at 693-694, 104 S.Ct. 2052. This Porter has done.” Porter, 130 S.Ct. at 455-56.
As we noted in Hurst v. State, 18 So.3d 975 (Fla.2009), in reversing and remanding for a new penalty phase, this Court also mandated a new penalty phase in Parker v. State, 3 So.3d 974 (Fla.2009), where counsel presented only a “bare bones” outline of mitigation at trial and substantial mental mitigation was presented at the postconvietion evidentiary hearing. 18 So.3d at 1011. The Court in Parker stated, “The ABA Guidelines provide that investigations into mitigating evidence ‘should comprise efforts to discover all reasonably available mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor.’ ” Parker, 3 So.3d at 984-85 (citing the American Bar Association Guidelines for the Appointment and Peyformance of Counsel in Death Penalty Cases 11.4.1(C), at 93 (1989)). “Among the topics that counsel should consider presenting in mitigation are the defendant’s medical history, educational history, employment and training history, family and social history, prior adult and juvenile correctional experience, and religious and cultural influences.” Id. at 985; see also Hurst, 18 So.3d at 1011 (quoting same statement from Parker, 3 *676 So.3d at 985). The same principles articulated in Porter and Parker apply here and lead, in my view, to a holding that Butler’s counsel failed to adequately represent him in the penalty phase; and based on the poor quality of mitigation presented below, coupled with the extensive mitigation that could have been presented, Butler has demonstrated prejudice under the second prong of Strickland.
Even though Dr. Maher testified at the Spencer hearing that Butler’s family history showed he was caught up in a cycle of violence, that testimony failed to establish the type and extent of the "violence; consequently, the trial court concluded in its sentencing order that “no evidence was presented that defendant’s family circumstances included violence.” Evidence of violence in Butler’s childhood was provided in the evidentiary hearing by witnesses who could and should have been identified and presented by penalty phase counsel. Similarly, the trial court rejected the mitigating circumstance that Butler had a troubled childhood for lack of proof, noting that “poverty is not a per se indicator of a troubled childhood.” Evidence of Butler’s troubled childhood extending beyond just poverty was presented at the evidentiary hearing. It included the fact that Butler’s mother was murdered and he was sent to live with his grandmother, who cared for a number of other children in a shack without facilities. He was made to work in a tobacco field at a young age, was often beaten, and was undernourished. After his grandmother died, he returned to his father, where he was raised without much parental guidance. His older brother was his primary caretaker, but was then imprisoned. Butler dropped out of school and became an unwed father at age eighteen. The fact that Butler was described as generally happy throughout this childhood in spite of the hardships should be counted as mitigation in and of itself, not as a fact refuting mitigation. All this evidence, which could have been presented to the jury and judge in the penalty phase, establishes the troubled childhood miti-gator that the trial court found unproven at trial.
In the direct appeal, the majority concluded that the death sentence was proportional even though the trial court found only the HAC aggravator. It is significant that in so holding, the majority noted the paucity of mitigation presented at the trial. The majority stated that “there was no evidence of extreme mental or emotional disturbance and little evidence of drug use.” Butler v. State, 842 So.2d 817, 833 (Fla.2003). Justice Pariente dissented in part, concluding inter alia that the death sentence in this single aggravator case was not proportional. Id. at 840 (Pariente, J., concurring in part and dissenting in part). Justice Pariente noted that although the trial court found no statutory mitigators, there was evidence that Butler was drinking and using cocaine on the night of the murder. Id. Further, Justice Pariente noted that Dr. Michael Maher testified in the Spencer hearing that the circumstances of the murder were consistent with the common effects of cocaine use in that they showed repetitive actions, such as the multiple stab wounds in this case. Id. Dr. Maher also testified that the violent death of Butler’s mother when he was age eight created a greater risk that Butler would resort to violence to resolve conflicts as an adult, especially when combined with drug abuse. Id. Dr. Maher’s testimony was not presented to the jury.
Justice Pariente was justifiably troubled on direct appeal by the fact that the majority supported its finding of proportionality — despite the fact that this was a single aggravator case — by considering that the victim suffered several instances of prior abuse by Butler and that Butler was “un *677 fazed by the presence of the victim’s children in the apartment at the time.” Id. at 841 (Pariente, J., concurring in part and dissenting in part) (quoting Butler, 842 So.2d at 834). I too am troubled by reliance on these nonstatutory grounds by the majority in the direct appeal. These circumstances appear to be in the nature of improper nonstatutory aggravators.
Now, on postconviction, we learn of the tragic circumstances of Butler’s family life as a child and the history of his drug and alcohol use — the very type of mitigation that the direct appeal majority noted was lacking. I simply cannot overlook the fact that this is a single — albeit weighty — ag-gravator case. I am mindful that this Court has previously affirmed the death penalty in single-aggravator cases where the single aggravator is weighty and where the mitigation is “insubstantial.” Bevel v. State, 983 So.2d 505, 524 (Fla.2008). Clearly, HAC is one of the “most serious aggravators set out in the statutory sentencing scheme.” Knight v. State, 76 So.3d 879, 890 (Fla.2011) (quoting Larkins v. State, 739 So.2d 90, 95 (Fla.1999)), cert. denied, — U.S. —, 132 S.Ct. 2398, 182 L.Ed.2d 1038 (2012). However, this Court has also held that “death is not indicated in a single-aggravator case where there is substantial mitigation.” Bevel, 983 So.2d at 524 (quoting Almeida v. State, 748 So.2d 922, 933 (Fla.1999)); see also Jones v. State, 705 So.2d 1364, 1367 (Fla.1998) (“Under Florida’s capital sentencing scheme, death is not indicated in a single — aggravator case where there is substantial mitigation. Although this legal precept — and indeed the rule of objective, dispassionate law in general — may sometimes be hard to abide, the alternative — a Court ruled by emotion — is far worse.”). This Court earlier stated in Thompson v. State, 647 So.2d 824 (Fla.1994), that “[w]e have in the past affirmed death sentences that were supported by only one aggravating factor, but those cases involved either nothing or very little in mitigation.” Id. at 827 (quoting Songer v. State, 544 So.2d 1010, 1011 (Fla.1989)). In Nibert v. State, 574 So.2d 1059 (Fla.1990), this Court vacated a death sentence and remanded for imposition of a life sentence where the single aggravator was HAC and the trial court found no statutory mitigation but found “possible” nonstatutory mitigation involving Nibert’s childhood. Id. at 1061. The Court found that additional mitigation was proven, including the fact that Nibert had an alcohol problem and was drinking at the time of the murder, suffered physical and psychological abuse as a child, felt remorse, had potential for rehabilitation, and according to an expert in the field of brain dysfunction, met the requirement for extreme mental or emotional disturbance and impairment of his capacity to control his behavior. Id. at 1062-63. In light of this other available mitigation, the Court in Nibert concluded that the death sentence in this single aggravator case was not proportional and remanded for a life sentence. Id. at 1063.
I cite these proportionality decisions not because we have proportionality as an issue in this postconviction appeal, but because they highlight the fact that if the extensive mitigation that was disclosed at the evidentiary hearing in this case had been presented to the jury and judge in Butler’s trial, the mitigation would not have been “insubstantial” as this Court essentially noted on appeal. Instead, the mitigation would have placed this case in the same category as those cases cited above where we concluded that the death penalty was not proportional in single-ag-gravator cases in which substantial mitigation was presented. Thus, I dissent because it is apparent to me, given the substantial mitigation that could and should have been presented in the penalty *678 phase of this trial, that this case would not have met the test of being one of the most aggravated and least mitigated of murders. See Rigterink v. State, 66 So.3d 866, 898 (Fla.2011) (“[T]his Court has an independent obligation to ensure that the death penalty is reserved for the most aggravated and least mitigated of murders.”).
For all the foregoing reasons, this Court should reverse Butler’s death sentence and remand for a new penalty phase proceeding.
PARIENTE and PERRY, JJ., concur.

. Butler's sister testified during the penalty phase of trial that, although she worked in the tobacco field at her grandmother’s house, she did not know if Butler was required to work in the tobacco fields. Clearly, her testimony was not helpful in mitigation.

. I also disagree with the majority's suggestion, majority op. at 666, that in order for mental health mitigation to be of value, it must establish a connection between the defendant’s deficiencies and the murder. A plurality of the United States Supreme Court held in Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), that in capital cases, "the Eighth and Fourteenth Amendments require that the sentencer ... not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.” Id. at 604, 98 S.Ct. 2954. Neither the Constitution nor our Supreme Court has required that mental mitigation somehow explain or excuse the crime. It need only provide the jury with some aspect of the defendant’s character or record that may serve as a basis upon which the jury might consider recommending life rather than death. This view is reinforced by the United States Supreme Court in Ayers v. Belmontes, 549 U.S. 7, 127 S.Ct. 469, 166 L.Ed.2d 334 (2006), in which the Court’s discussion reconfirmed that proper mitigation is not just mitigation that explains or excuses the crime, but is any mitigating factor concerning the defendant’s background and character that provides a basis for the sentencer to impose a sentence less than death. Id. at 12-13, 127 S.Ct. 469. The Supreme Court in Porter v. McCollum, 558 U.S. 30, 130 S.Ct. 447, 175 L.Ed.2d 398 (2009), did not in any way indicate that the mental health mitigation this Court "unreasonably discounted” was required to explain or excuse the crime. Instead, the Court reemphasized that "the Constitution requires that ‘the sentencer in capital cases must be permitted to consider any relevant mitigating factor.' ” Porter, 130 S.Ct. at 454-55 (quoting Eddings v. Oklahoma, 455 U.S. 104, 112, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982)).