IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

STATE OF FLORIDA,

      Appellant,

v.

MILDRED ANN ADAMS,

      Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D14-2880

Opinion filed June 8, 2015.

An appeal from the Circuit Court for Walton County.
Kelvin C. Wells, Judge.

Pamela Jo Bondi, Attorney General, Kristen Bonjour, Assistant Attorney General, Tallahassee, for Appellant.

Nancy A. Daniels, Public Defender, Steven L. Seliger, Assistant Public Defender, Tallahassee, for Appellee.

THOMAS, J.

The State appeals the trial court's order granting Appellee's motion for judgment notwithstanding the jury verdict and reducing Appellee's conviction for burglary of an occupied structure to the lesser-included offense of trespass of an occupied structure. We reverse the trial court's order granting Appellee's motion for judgment of acquittal notwithstanding the verdict.

## *Background*

Appellee was charged with burglary of an occupied dwelling and petit theft. The evidence presented at trial reflected that Appellee was a neighbor and friend of the homeowners and their son, but their relationship had changed. All three members of the household testified that Appellee was not permitted in their home alone, had visited only four or five times in the two years before the incident, and did not have permission to come into their home to take or borrow any of their medication.

The homeowner's son, who resided in the home with his parents, testified that on the day of the incident, after returning home alone from a birthday party and while in the bathroom, he heard a knock at the door. He did not respond, but heard Appellee enter the home and call out his mother's name. While still in the bathroom, he heard footsteps toward the back of the house and Appellee calling out his mother's name again. He came out of the bathroom and found Appellee in the kitchen, fumbling through a bowl where they kept medication, including his father's Lortab prescription. When he asked Appellee what she was doing, she dropped everything in her hands and began to stutter, and said that she was looking for the Tylenol that his mother had given her a few days earlier.

The homeowner's son asked Appellee to leave and noticed that she had a clenched fist as if she was holding something, and then put her fist in her pocket.

2

After his parents returned home, it was discovered that his father's Lortab prescription bottle was empty. The son testified that the last time he had seen the bottle, there were pills in it.

His mother testified that Appellee had not borrowed medicine from her since the relationship went "sour," but when Appellee previously borrowed medicine, she would call and it would be brought out to her on the front porch or at the front gate. She further testified that she managed her husband's prescription medication and thought there were ten Lortab pills left in her husband's prescription bottle, but acknowledged that the last time that she counted his pills was two months prior to the incident. She denied that any other people had been in the house in the two-month period, and she did not think her husband or son had taken the pills. Her husband confirmed that his wife managed his prescription medication, as he could not read or write, and gave them to him for pain, as needed. He further testified that Appellee had never borrowed or asked him for permission to come to their house to take medication before this incident.

The investigating officer testified that he questioned Appellee. Appellee admitted going to the residence to borrow Tylenol. She knocked on the door, but no one answered and the door was unlocked. She admitted to entering the residence, going into the kitchen where they normally kept the medicine and rummaging through it to find Tylenol, but the homeowner's son came out of the

3

bathroom and told her to leave. She told the officer that she apologized and left the residence. The officer did not find any pills on her person, but did not search her residence.

After the State rested its case, Appellee's counsel moved for a judgment of acquittal (JOA), arguing that there were no Lortab pills found on Appellee, and the State had not rebutted her reasonable hypothesis of innocence that other people had the opportunity to take the Lortab pills in the two-month period. The trial court took the motion under advisement. Appellee did not put forth any evidence, and the jury returned its verdict.

The jury found Appellee guilty as charged of burglary of an occupied dwelling with specific findings that there was a person in the structure and the structure was a dwelling, but the jury found Appellee not guilty of petit theft. At a subsequent hearing, however, the trial court announced that it was revisiting its prior ruling on Appellee's motion for JOA notwithstanding the verdict, and finding that the evidence was insufficient for a conviction of burglary. Accordingly, the trial court reduced the conviction to the lesser-included offense of trespass of a structure while occupied. The State objected, asserting that there was sufficient evidence admitted to prove burglary of a dwelling while occupied.

<u>Analysis</u>

The appropriate standard of review on a motion for JOA is de novo. <u>Pagan</u>

4

v. State, 830 So. 2d 792, 803 (Fla. 2002). A judgment of conviction comes to an appellate court clothed "with the presumption of correctness and a defendant's claim of insufficiency of the evidence cannot prevail where there is substantial competent evidence to support the verdict and judgment." Terry v. State, 668 So. 2d 954, 964 (Fla. 1996). This court's review is limited to whether the evidence the State presented in their case-in-chief was legally sufficient. Robinson v. State, 936 So. 2d 1164, 1166 (Fla. 1st DCA 2006). An appellate court may not reweigh the evidence or assess the credibility of a witness. See Tibbs v. State, 397 So. 2d 1120, 1125 (Fla. 1981).

We reject Appellee's contention that the circumstantial evidence standard applies to this case. "If the State presents both direct and circumstantial evidence, courts do not apply the special standard of review applicable to circumstantial evidence cases." Mosley v. State, 46 So. 3d 510, 526 (Fla. 2009) (citing Pagan v. State, 830 So. 2d 792, 803 (Fla. 2002)). "As this court has recognized, 'Direct evidence is that to which the witness testifies of his own knowledge as to the facts at issue. Circumstantial evidence is proof of certain facts and circumstances from which the trier of fact may infer that the ultimate facts in dispute existed or did not exist.'" Id. at 526, n.14 (quoting Baugh v. State, 961 So. 2d 198, 203 n.5 (Fla. 2007)). Here, there was direct evidence presented that Appellee entered the home, including testimony from the homeowner's son and Appellee's own admission to

5

the officer that she entered the home to take Tylenol. Accordingly, the special standard is not applicable to this case.

To prove the crime of burglary, the State had to prove beyond a reasonable doubt that Appellee entered the home and, at the time of entering, had the intent to commit theft in that structure. § 810.02, Fla. Stat. (2012). The State provided sufficient evidence as to the first element of burglary, including the testimony of the homeowner's son that he heard Appellee come into the house after knocking on the door, yelling his mother's name, and he found her in their kitchen rummaging through a bowl where his parents kept medicine. Additionally, Appellee admitted to the officer that she entered the home. Moreover, although the trial court did not explain the basis for changing its ruling at the subsequent hearing, the trial court had to have concluded that the State presented sufficient evidence as to this element, as the lesser-included offense of trespass also required the State to prove that Appellee entered the home. As such, the issue on appeal is whether the State provided competent, substantial evidence as to the second element.

"Whether one had intent is generally a question given to a jury, for reasonable men may differ in determining intent when taking into consideration the surrounding circumstances." State v. Herron, 70 So. 3d 705, 706 (Fla. 4th DCA 2011) (citing Washington v. State, 737 So. 2d 1208, 1216 (Fla. 1st DCA 1999)). "Therefore, if a rational trier of fact could find the existence of the elements of the

6

crime beyond a reasonable doubt, a conviction should be sustained." Id. (citing Pagan, 830 So. 2d at 803).

In this case, the State presented sufficient evidence on which a rational trier of fact could find the existence of an intent to take the Tylenol without the homeowners' permission, and the trial court should have sustained the conviction for burglary. The State provided evidence that Appellee admitted to the investigating officer that she entered the home to take Tylenol and also told the homeowner's son that she was in the home looking for Tylenol. The State also introduced evidence that Appellee did not ever have permission to enter their home alone or take their medication. The State further presented evidence that when Appellee had borrowed medication in the past, it was handed to her outside, but that Appellee had not borrowed headache medicine in the two years prior to the incident. This was sufficient evidence to present to the jury and upon which a rational trier of fact could find the existence of every element of burglary beyond a reasonable doubt.

In fact, even were we to apply the circumstantial evidence rule to this case, we would reverse. See Sustakoski v. State, 992 So. 2d 306 (Fla. 4th DCA 2008) (holding that evidence was sufficient to contradict defendant's hypothesis of innocence that he lacked intent as principal to burglary). Accordingly, we reverse with directions to reinstate the jury's verdict.

7

REVERSED and REMANDED with directions.

MARSTILLER and BILBREY, JJ., CONCUR.